# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00015-CR

**William Bryan Finley, III, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY**
**NO. 11-01764-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING**

---

## D I S S E N T I N G   O P I N I O N

I respectfully dissent.

A fair reading of the officers' testimony shows that when they decided to arrest appellant, he refused their order to put his hands behind his back to be handcuffed. Officer Connor attempted to grab one of appellant's arms, and Officer Rollins attempted to grab the other arm to pull them behind appellant's back. In an effort to thwart the officers' attempts to handcuff him, appellant "tensed up his body," turned his back on the officers, and pulled his hands and arms forward toward his abdomen. In Officer Connor's words, appellant was "trying to pull away from us." After the officers "leaned" appellant into the front door, Officer Connor tripped appellant and "took him straight to the ground." After he was on the ground, appellant "was trying to keep his hands underneath his body." Only after he was tased twice did appellant offer his hands for handcuffing.

Obviously appellant was attempting to "prevent or obstruct a person he knows is a peace officer . . . from effecting an arrest"; the issue here, however, is whether appellant's actions constitute "using force against the peace officer." Tex. Penal Code § 38.03(a).

As the majority opinion notes, Texas appellate courts have long struggled to determine the meaning of "using force against the peace officer." *See* Slip Op. at 4-5 nn.7-10. The court of criminal appeals recently addressed this issue in *Dobbs v. State*, 434 S.W.3d 166 (Tex. Crim. App. 2014), but I fear that the court's opinion raises as many questions as it answers. The court first held that "the statutory language plainly requires a use of force directed 'against' the officer himself, not against his broader goal of effectuating an arrest." *Id.* at 171. The court then went on to state:

> The Legislature's inclusion of the word "against" before the words "the peace officer" signifies that it intended to require proof that a defendant not only generally used force in the presence of the officer, but also that he specifically used force in the direction of and/or in contact with, or in hostility or opposition to, the officer. *See* [Tex. Penal Code § 38.03(a)]. The statutory language thus requires not merely a showing that the actor engaged in some conduct designed to delay his arrest or to make his arrest more difficult, but rather that he have used some kind of force in opposition to, in the direction of, or in contact with the officer himself for the purpose of preventing an arrest.

*Id.*

Questions persist. For example, what does "in opposition to" mean? In its broadest sense, this phrase could include opposition to the officer's "broader goal of effectuating an arrest." If the phrase means less than that, how are the boundaries of that standard to be determined? Is the line of demarcation when the arrestee comes "in contact with the officer himself"? But if that is the

2

defining threshold, does it include contact initiated by the officer? As current Presiding Judge Keller

alluded to in her opinion in *Thompson v. State*,

> [T]he Court of Appeals appears to have misconstrued a statute, namely Texas Penal Code § 38.03. . . . Under the Court of Appeals' interpretation, it would appear that an accused "uses force against a peace officer" even though the accused's action merely consists of refusing to yield to *a peace officer's use of force against the accused*. That interpretation seems questionable, and in my mind, appears to confuse which actor is actually using force. I am skeptical of the proposition that the mere resistance to force necessarily constitutes the actual use of force. The practice commentary to § 38.03, which we quoted in *Washington* [*v. State*, 525 S.W.2d 189 (Tex. Crim. App. 1975)], appears to require more: "The section applies only to resistance by the use of force. One who runs away or makes an effort to shake off the officer's detaining grip may be guilty of evading arrest under § 38.04, but he is not responsible under this section." *Washington*, 525 S.W.2d at 190 (quoting practice commentary).

987 S.W.2d 64, 65 (Tex. Crim. App. 1999) (Keller, J., dissenting from refusal of PDR) (emphasis

in original).

The difficulty in attempting to discern the answers to these questions from the *Dobbs*

opinion is that the factual circumstances in *Dobbs* were highly unusual (the defendant displayed a

gun but pointed it only at his own head). As a result, in the more typical case like the present one,

we are left to try to interpret standards such as "in opposition to" and "in contact with the officer"

in a vacuum.

My own view of the law is similar to that adopted by the Waco Court of Appeals in

*Sheehan v. State*, 201 S.W.3d 820 (Tex. App.—Waco 2006, no pet.). There, the court held that:

> A person commits the offense of resisting arrest if he intentionally prevents or obstructs a person he knows is a peace officer from effecting an arrest by using force

3

against the peace officer. Tex. Pen. Code Ann. § 38.03(a) (Vernon 2003). We recently wrote:

> The Penal Code does not provide a definition of "using force against" or of those terms individually. Courts have concluded that non-cooperation with an arrest is not an act of "use of force against" a peace officer under the resisting arrest statute, for example:
>
> - shaking off an arresting officer's detaining grip. *Anderson v. State*, 707 S.W.2d 267, 269 (Tex. App.—Houston [1st Dist.] 1986, no pet.).
> - pulling away from an arresting officer after being arrested. *Young v. State*, 622 S.W.2d 99, 100–01 (Tex. Crim. App. [Panel Op.] 1981).
> - crawling away from an arresting officer. *Leos v. State*, 880 S.W.2d 180, 181 (Tex. App.—Corpus Christi 1994, no pet.).
>
> **Thus, refusing to cooperate with being arrested does not constitute resisting arrest by force.** However, we have held that evidence of non-cooperation combined with violent swings of the body and a forward movement causing the officer and the defendant to fall off a porch was sufficient to establish resisting arrest. *Bryant v. State*, 923 S.W.2d 199, 206 (Tex. App.—Waco 1996, pet. ref'd).

*Campbell v. State*, 128 S.W.3d 662, 671 (Tex. App.—Waco 2003, no pet.) (emphasis added). And courts have made the distinction between actions that endanger an officer (i.e. striking an arresting officer's arm) and those actions in which there is no danger of injury to the officer (i.e. pulling arm away from officer). *See Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd).

*Id.* at 822–23. From the testimony of one of the arresting officers, the factual circumstances in

*Sheehan* were remarkably similar to those in the present case:

> [W]e told him that we were here to serve a warrant and he said that he had to pack all his stuff and we told him that the staff packs his stuff, he needed to go with us.
>
> He refused and when Crosby [the other officer] went to reach for his left arm, he stood up and pulled his hands into his chest and leaned toward the bunk bed which is kind of restricted. It's a restricted area. So, I grabbed his right arm. Crosby had

4

his left hand. We moved him to the ground so he couldn't try to run away, got his arms behind his back, handcuffed him and walked him outside, escorted him outside of the door.

*Id.* at 821–22. Although the defendant had obviously exerted some "force" in his effort to prevent the officers from handcuffing him, the court characterized his actions as "passive non-cooperation" and reversed the resisting-arrest conviction.

In my opinion, *Dobbs* has not answered the question of whether the type of passive non-cooperation seen in *Sheehan*—and that I believe exists in the present case—constitutes the degree of "force against [a] peace officer" needed to support a conviction for resisting arrest under section 38.03. I do not think it does. Accordingly, I would reverse appellant's conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Filed: August 28, 2014

Publish

5